UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SA CV 08-219 AHS |
| | ) | SA CR 02-185 AHS |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | ORDER DENYING PETITIONER'S |
| | ) | MOTION TO VACATE, SET ASIDE |
| DAVID FREDERICK THORNTON, | ) | OR CORRECT SENTENCE UNDER 28 |
| | ) | U.S.C. § 2255 |
| Defendant/Petitioner. | ) | |

**I.**

**PROCEDURAL BACKGROUND**

On June 28, 2002, a federal grand jury returned a 33-count indictment charging David Frederick Thornton ("defendant or "petitioner") with mail fraud in violation of 18 U.S.C. § 1341 (ten counts), wire fraud in violation of 18 U.S.C. § 1343 (nineteen counts), and impersonation of a federal officer or employee in violation of 18 U.S.C. § 912 (four counts).  On March 17, 2003, pursuant to a written plea agreement, defendant pleaded guilty to two counts of mail fraud, two counts of wire fraud, and one count of impersonating a federal officer.  On June 16, 2003, the court sentenced defendant to ninety-six months imprisonment,

1   three years supervised release, $644,388.25 in restitution, and a

2   $500 mandatory special assessment.

3           As a result of defendant's first appeal, the Court of

4   Appeals for the Ninth Circuit, on April 10, 2006, remanded

5   defendant's case for limited proceedings in accordance with

6   United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en

7   banc), United States v. Thornton, 176 Fed. Appx. 765 (9th Cir.

8   2006).  On October 16, 2006, the Court determined that re-

9   sentencing was not required.  Defendant again appealed.  On

10  January 10, 2008, in a published opinion, United States v.

11  Thornton, 511 F.3d 1221 (9th Cir. 2008), the Ninth Circuit

12  affirmed defendant's sentence.

13          Defendant's motion under 28 U.S.C. § 2255 (the "2255

14  Motion") raises multiple claims that his counsel, Deputy Federal

15  Public Defender Leon Peterson ("Peterson" or "defense counsel")

16  performed below constitutional standards in handling defendant's

17  case.  For the reasons discussed below, defendant does not

18  establish ineffective assistance of counsel as set forth in

19  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L.

20  Ed. 2d 674 (1984), because defendant does not show that his

21  counsel's conduct was deficient or that defendant was prejudiced

22  by any deficiencies in legal representation.

23                              **II.**

24                        **OFFENSE CONDUCT**

25          Because the parties are familiar with the facts, the

26  Court sets forth the overview contained in the Ninth Circuit's

27  opinion in United States v. Thornton, 511 F.3d 1221, 1224 (9th

28  Cir. 2008).

Over the course of many years, defendant successfully defrauded friends, family members, and complete strangers out of hundreds of thousands of dollars. He used two schemes: the first involved a charitable foundation he established purportedly to raise funds for kidney research for the University of Southern California ("USC"). In return for the funds raised, USC paid Thornton a salary and covered the administrative costs of the fund-raising. Although Thornton turned over to USC some of the funds raised, he kept about $150,000 for his own purposes. He also charged more than $25,000 to credit cards taken out on behalf of his foundation and USC, although USC never authorized any joint credit cards. For about a year after USC terminated its relationship with Thornton and his foundation, Thornton continued fraudulently to solicit funds.

In the second scheme, Thornton purported to be working for the United States government on various top secret missions, mostly involving channeling Nigerian money into the United States. Thornton explained to his victims that these transactions required heavy financing but would result in huge returns. Many friends and family members believed the tale, and Thornton bilked them out of hundreds of thousands of dollars. He also unsuccessfully attempted to cash a counterfeit check for $25 million, purportedly from the Nigerian government.[1]

//

---

[1] Further description of the offense conduct, as later referred to herein, is derived from the facts reported in the Pre-Sentence Report ("PSR") to which defendant made no objection and which facts the Court adopted as its findings of fact at defendant's sentencing hearing.

III.

**SUMMARY OF PARTIES' CONTENTIONS**

A.        Petitioner's Grounds for Relief

Claim One:  Defense counsel failed to contact and/or interview witnesses that defendant named as persons who could confirm his innocence.

Claims Two and Three:  Defense counsel failed to investigate and raise defendant's claim that a "key prosecution witness unlawfully obtained [defendant's] private documents and records" and thereafter allowed government agents to review those documents without a search warrant.

Claim Four:  Defense counsel refused to prepare for trial and insisted that defendant plead guilty because counsel was too "overwhelmed."  Counsel also contacted defendant's wife and mother without defendant's permission and told them that defendant faced "22" years in prison if he refused a plea agreement.

Claim Five:  Defense counsel stated he was "too busy" to convey defendant's offer to cooperate with the government in exchange for sentencing leniency.

Claim Six:  Defense counsel instructed defendant to "lie under oath" about defendant's purported innocence when pleading guilty.

Claim Seven:  Defense counsel refused to forward letters written by defendant and his wife, mother, and father to the U.S. Probation Office and Court in connection with sentencing.

Claim Eight:  Defense counsel refused to investigate

the claim that defendant was a victim of entrapment due to his years of involvement with the "Republican Party, government politics, personal relationships and commendations from President Reagan, President George H. W. Bush, Vice President Quayle, Governor Wilson, and other leaders," along with defendant's ongoing communications with the U. S. Government.

Claim Nine:  It was error for defense counsel not to object to the presence of 35 victims at the sentencing hearing.

Claim Ten:  Defense counsel was ineffective by failing to object at sentencing to the imposition of the abuse of trust enhancement, imposition of conditions of release requiring drug treatment and psychological counseling, and the order to make monthly restitution payments of $1,000.

Claim Eleven:  Defense counsel failed to object to the sentencing enhancement for carrying a weapon in connection with the offense and failed to investigate defendant's claim that he had a permit to carry such a weapon.

Claim Twelve:  Defense counsel erred by failing to object to the Court's imposition of a 16-level increase for amount of loss at sentencing.

Claim Thirteen:  The government unlawfully informed third parties when it would execute arrest and search warrants concerning defendant and/or his property, but Peterson failed to act on such information.

Claim Fourteen:  Defense counsel failed to obtain or use certain purported exculpatory documents, namely, the Thornton Foundation Bylaws and a contract with USC.

Claim Fifteen:  Defense counsel failed to obtain

medical records or argue for a downward departure based on defendant's medical condition.

**B.        Respondent's Opposition**

Defendant's motion should be denied in all respects. Defendant was not denied effective assistance of counsel, and the Declaration of defense counsel who represented defendant so indicates.  The evidence attached to the Declaration of Curtis Kin, Assistant United States Attorney, comprised of discovery and plea agreement correspondence exchanged with Peterson, the final plea agreement pursuant to which defendant entered his guilty pleas, reporter's transcripts of defendant's change of plea and sentencing hearings, the defendant's Sentencing Position and letters submitted in support of defendant, and the Court's Tentative Ruling issued at the sentencing hearing, support the government's position that defendant is not entitled to relief. Claim by claim, the government refutes petitioner's contentions as follows.

**1.  Failure to interview witnesses (Claim #1)**

Defendant asserts that Peterson failed to interview witnesses that defendant named as persons who could confirm his innocence.  However, it is not clear that defendant ever provided Peterson with a list of persons to interview.  (Peterson Decl. ¶ 33).  Peterson did instruct his defense investigator to contact a number of witnesses, including some of whom may have been identified by defendant as persons to interview.  (Peterson Decl. ¶ 33).  The investigator made contact with a number of witnesses, including:  (1) Dr. E.U. Kalu, Director of the Central Bank of Nigeria, who could not verify or provide any definitive answers

about the existence of any contracts with Thornton for millions of dollars; (2) Dr. Joseph Sansu (or Sansusi) of Nigeria; (3) Steven Hurd, the bodyguard defendant had hired; (4) Dr. J. Hapleman of the USC Medical Department; (5) B. Ott, whom defendant claimed was his investment advisor; (6) M. Silk, who was defendant's former business partner and friend; and (7) defendant's wife and mother.  (Peterson Decl. ¶ 33).

After November 1, 2002, when defendant first indicated he wanted to plead guilty, the focus of Peterson's representation shifted to negotiating the best plea agreement possible and investigating the case insofar as it would relate to defendant's guilty plea and sentencing, as opposed to trial preparation. (Peterson Decl. ¶ 33).  Peterson's representation necessarily changed from interviewing witnesses that would demonstrate innocence.  Instead, Peterson's changed his approach to develop evidence in mitigation, including, for example, an emphasis on making arrangements for a psychological examination. (Peterson Decl. ¶ 9).

> **2.   Failure to investigate and object to government's receipt of documents by a third party without a search warrant (Claims #2 & #3)**

Defendant claims that Peterson failed to investigate and raise defendant's claim that a "key prosecution witness unlawfully obtained [defendant's] private documents and records" and thereafter allowed government agents to review those documents without a search warrant.  It is not clear that defendant, in fact, ever raised this issue with Peterson. (Peterson Decl. ¶ 34).  This ground for relief lacks merit.

### 3.   Failure to prepare for trial because too "overwhelmed" (Claim #4)

The record shows that, in his plea agreement, defendant:  (1) admitted that he was "in fact guilty" of the offenses to which he pled guilty; (2) agreed to a lengthy statement of facts outlining in detail his charity fraud scheme, his Nigerian fraud scheme, and his false impersonation of government officers; and (3) signed his name under the attestation that he understood the entire agreement and agreed to all of its terms.  (Kin Decl. Ex. E at ¶¶ 6, 15, 30 & Attach. A).

At the change of plea hearing, defendant confirmed under oath that he wanted to plead guilty and was guilty.  (Kin Decl. Ex. F at 4, 12, 13).  Defendant also confirmed under oath that he agreed to the statement of facts attached to the plea agreement, which established his guilt, and did not wish to make any changes.  (Kin Decl. Ex. F at 16-17).  When asked explicitly by the Court whether he wished to give up his rights to persist in pleas of not guilty and go to trial, defendant answered, under oath, in the affirmative.[2]  Kin Decl. Ex. F at 21 22).

Consistent with defendant's actions and statements that he, in fact, was guilty and wanted to plead guilty is the recollection of his counsel.  Peterson has no recollection of defendant ever pleading with him to go to trial.  (Peterson Decl. ¶ 35).  Rather, on numerous occasions prior to signing the plea agreement, defendant told Peterson that he wanted to plead

---

[2]   In making these statements to the Court under oath, defendant acknowledged that a false answer would subject him to criminal penalties.  (Kin Decl. Ex. F at 4-5).

guilty, including meetings on November 1, 2002; December 17, 2002; December 19, 2002; February 6, 2003; and February 28, 2003. (Peterson Decl. ¶¶ 8, 12, 15, 18, 22).  On March 7, 2003, defendant ultimately signed the agreement after Peterson reviewed all of the terms of the agreement and discussed the risks and potential consequences of rejecting the proposed agreement. (Peterson Decl. ¶ 25).  After signing the plea agreement, Peterson met with defendant in advance of the guilty plea hearing, and defendant verified that he wished to go forward with his guilty plea.  (Peterson Decl. ¶ 27).  If defendant had indicated he no longer wanted to plead guilty, Peterson, consistent with his normal practice, would have instructed his client not to go forward.  (Peterson Decl. ¶ 27).  But, defendant gave no indication of any problems, hesitations, or doubts about the decision to plead guilty, other than the ordinary unhappiness attendant with the realization that he must plead guilty to having committed crimes.[3]  (Peterson Decl. ¶ 27).

Because the record clearly shows that defendant sought to plead guilty, it is hardly surprising that the record does not support the claim indeed -- bears no indication -- that Peterson "insisted" defendant plead guilty or told defendant that he was too "overwhelmed" to prepare for trial.  Peterson denies having

---

[3]   While it is true that, prior to signing the plea agreement, defendant indicated on three occasions that he did not wish to plead guilty or at least wanted a new lawyer, he recanted almost immediately thereafter and confirmed that he did want to plead guilty.  (Peterson Decl. ¶¶ 10-11, 14-15, 17-18).  Notably, even when expressing some hesitance about pleading guilty, defendant never went so far as to indicate any desire to go to trial.

done so.  (Peterson Decl. ¶ 35).  Furthermore, Peterson's so

doing would have been entirely inconsistent with his ordinary

practice of proceeding to trial if a client wants to go trial.

(Peterson Decl. ¶ 35).  Moreover, the allegation that Peterson

claimed he was too "overwhelmed" to prepare for trial is entirely

inconsistent with the fact that Peterson spent numerous hours and

days working on defendant's case, as set forth in Peterson's

Declaration and his case management notes.  Thus, to the extent

Peterson "insisted" that defendant should plead guilty, such

insistence did not arise from Peterson's desire to avoid

preparing for trial; rather, it was borne of Peterson's

assessment that it was in defendant's best interest to accept the

government's plea offer, particularly in light of Peterson's

review of the case, the overwhelming evidence against defendant,

and the risks and downside of proceeding to trial.  (Peterson

Decl. ¶ 35).  Among other reasons, Peterson came to that

conclusion because defendant had made post-arrest statements

sufficient to support findings of guilt to all charges in the

indictment and because a conviction after trial might have led

to a Sentencing Guidelines range of 292-365 months imprisonment,

as opposed to the Guidelines range of 70-87 months contemplated

by the government's plea offer.  (Peterson Decl. ¶ 35).

        Accordingly, when viewed against the record, including

defendant's statements under oath at the plea hearing, it is

clear that defendant's unsubstantiated claims that his counsel

refused to prepare for trial and insisted defendant plead guilty

are so palpably incredible, patently frivolous, and false that

they must be dismissed.  Blackledge v. Allison, 431 U.S. 63, 76,

1  97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977); <u>Baumann v. United</u>
2  <u>States</u>, 692 F.2d 565, 571 (9th Cir. 1982).  Moreover, based on
3  the overwhelming evidence against defendant (including his
4  written confession), it was highly reasonable -- and certainly
5  not constitutionally defective -- for Peterson to have strongly
6  advised defendant to plead guilty.  <u>Strickland</u>, 466 U.S. at 689.

7        **4.   Failure to convey to government the defendant's**
8            **desire to cooperate (Claim #5)**

9        Defendant alleges that Peterson stated he was "too
10 busy" to convey defendant's offer to cooperate with the
11 government in exchange for sentencing leniency.  Even if true,
12 defendant's claim must fail, because no prejudice resulted from
13 the purported failure of Peterson to communicate defendant's
14 willingness to cooperate.[4]  On the heels of his arrest, defendant
15 communicated in a written statement his willingness to cooperate
16 with the government (Kin Decl. ¶ 4 & Ex. C), and, thus, the
17 government was well aware of defendant's stated desire to assist
18 law enforcement, regardless of whether Peterson passed along
19 defendant's wish to cooperate.

20       In any event, whether defendant, Peterson, or both had
21 lobbied the government for sentencing leniency in exchange for
22 defendant's cooperation, the government was not ultimately
23 interested in defendant's cooperation, because the government had
24 concluded that defendant could not provide any substantial
25 cooperation or assistance based on its review of documents seized

26
27       [4]  Peterson declares that he would never tell a client that
    he was "too busy" to pursue cooperation with the government, and
    did not do so with respect to defendant in particular.  (Peterson
28 Decl. ¶ 36).

during the execution of the search warrant at defendant's home. The government's conclusion was in accord with Peterson's own conclusion that defendant did not have sufficient information about other Nigerian perpetrators of fraud such that the government would be interested in hearing about his information or that defendant's providing such information would have risen to the level of substantial assistance worthy of a downward departure for cooperation under Sentencing Guidelines Section 5K1.1.[5]  (Peterson Decl. ¶ 36).

Accordingly, defendant's claim should be dismissed, because, even if true, defendant suffered no prejudice. Strickland, 466 U.S. at 694.

### 5.   Instructing defendant to lie about defendant's innocence at the guilty plea hearing (Claim #6)

Defendant says that Peterson instructed defendant to "lie under oath" about defendant's purported innocence when pleading guilty.  As with defendant's claim that Peterson insisted defendant plead guilty despite defendant's innocence, previously discussed, the record clearly establishes the incredulity of defendant's claim here.  To begin with, Peterson flatly denies having instructed defendant to lie and maintains that he would never give such an instruction to any client. (Peterson Decl. ¶¶ 27, 37).  Indeed, Peterson states that, consistent with his normal practices, he met with defendant prior to the guilty plea hearing and explicitly instructed defendant to

_____

[5]   Indeed, it is Peterson's usual practice to encourage cooperation with the government if doing so would benefit his client, which, in Peterson's view, was not the case here. (Peterson Decl. ¶ 36).

12

tell the truth.  (Peterson Decl. ¶¶ 27, 37).

Consistent with Peterson's statement, the record unequivocally shows that defendant pled guilty because he was guilty.  Defendant confessed orally and in writing upon his arrest.  (Kin Decl. Ex. C).  As part of his plea agreement, defendant agreed to a statement of facts that was entirely consistent with defendant's initial confessions.  (Compare Kin Decl. Ex. C with Ex. E at Attachment A).  At the change of plea hearing, defendant acknowledged his understanding that his answers to the Court were under oath and subject to prosecution for perjury if false.  (Kin Decl. Ex. F at 4-5).  While under oath, defendant consistently and steadfastly maintained his desire to plead guilty, as well his belief that he was, in fact, guilty.  (Kin Decl. Ex. F at 4, 12, 13, 16-17).  Indeed, when asked directly by the Court, defendant confirmed that his guilty pleas were made freely and voluntarily and that there was no reason whatsoever why the Court should not accept his guilty pleas.  (Kin Decl. Ex. F at 29 30).  Having had the chance to observe defendant and consider the circumstances, the Court also concluded that "he's chosen to make these guilty pleas intelligently [and] that he entered the guilty pleas because he actually committed these crimes and not for any other reason." (Kin Decl. Ex. F at 32-33).

Thus, in view of the entire record, defendant's unsubstantiated claim that Peterson instructed him to lie under oath in order to plead guilty despite defendant's innocence is so palpably incredible, patently frivolous, and false that it too must be dismissed.  <u>Blackledge</u>, 431 U.S. at 76; <u>Baumann</u>, 692

1   F.2d at 571.

2         **6.    Failure to forward letters at sentencing (Claim**

3               **#7)**

4           Defendant alleges that Peterson refused to forward

5   letters written by himself and his wife, mother, and father to

6   the U.S. Probation Office and the Court in connection with

7   sentencing.  Peterson, however, did forward a letter from

8   defendant's wife along with his sentencing position paper.

9   (Peterson Decl. ¶ 38).  Moreover, along with that letter,

10  Peterson sent to the Court and Probation Office numerous other

11  letters from friends and family members who wrote on defendant's

12  behalf.  (Peterson Decl. ¶ 29; Kin Decl. Ex. G).

13          Whether there were, in fact, letters written by

14  defendant's mother and father is unclear (Peterson Decl. ¶ 38),

15  but it is clear that any such letters would not have altered the

16  outcome.  At sentencing, the Court indicated that it had read and

17  considered all the various letters submitted by both defendant's

18  supporters and detractors.  (Kin Decl. Ex. I at 4) ("[T]hese

19  lengthy letters have been reviewed by the court one by one so

20  that we are well aware of many of the positions of the family

21  members.").  Moreover, the Court explicitly acknowledged at

22  sentencing its understanding that defendant's parents continued

23  to support him and even considered that support a mitigating

24  circumstance.  (Kin Decl. Ex. I at 17) ("The probation officer

25  points out a factor in mitigation with is the support defendant

26  continues to receive from parents and his wife.").

27          Nonetheless, well aware of the continuing support from

28  defendant's parents and wife, the Court imposed a substantial

ninety-six month sentence, finding that "the long-term, more than

misconduct, betrayal and lies and criminal conduct over the

years" justified the sentence.   Any additional letters from

defendant's parents and wife outlining their support for

defendant of which the Court was already well aware would not

have affected the outcome.   Accordingly, this claim must also be

rejected.   <u>Strickland</u>, 466 U.S. at 694.

### 7. Failure to assert entrapment defense (Claim #8)

Defendant claims that Peterson refused to investigate

the claim that defendant was a victim of entrapment.   It is not

clear that defendant urged Peterson to investigate his purported

entrapment defense.   (Peterson Decl. ¶ 39).   In any event,

Peterson rightly refused to pursue any entrapment defense, as

there was no government involvement with defendant's conduct

forming the basis of the criminal charges.   (Peterson Decl. ¶

39).   Notably, there was no allegation or suggestion that the

government was involved in defendant's fraudulent solicitation of

donors for his foundation, his applying for and using credit

cards without authorization from USC, his lies to friends and

family about fake Nigerian business deals in order to obtain

their money, his attempt to cash a $25 million counterfeit check,

or his attempt to procure multiple luxury automobiles by

pretending to work for the government.   <u>United States v. Glassel</u>,

488 F.2d 143, 146 n.2 (9th Cir. 1973) (noting that "[i]n fact,

entrapment cannot be a defense unless there is government

participation or 'intervention'").

Accordingly, any failure to pursue an entrapment

defense was entirely reasonable and in no way constituted

1  ineffective representation; certainly, no prejudice resulted from

2  the absence of raising a defense having no applicability to the

3  case.  Strickland, 466 U.S. at 687-88, 694.

4          **8.    Failure to object to presence of victims at**

5                  **sentencing hearing (Claim #9)**

6          Defendant ascribes error to Peterson's failure to

7  object to the presence of thirty five victims at the sentencing

8  hearing.  While the decision not to object is true,[6] the claim

9  that it is error is not.  As Peterson well recognized,

10  defendant's victims had a right to be present at his sentencing

11  and any objection by Peterson to that effect would have been

12  contrary to law.  (Peterson Decl. ¶ 40); Kenna v. U.S. Dist. Ct.,

13  435 F.3d 1011, 1015 (9th Cir. 2006) (noting that district court

14  proceedings, including sentencing hearings, are public

15  proceedings).  Accordingly, Peterson committed no error when he

16  did not object to the presence of thirty five victims exercising

17  their right to attend defendant's public sentencing hearing.  He

18  was thus not constitutionally ineffective when he reasonably

19  chose not to make that objection.  Strickland, 466 U.S. at 688.

20  //

21  //

22  //

23          **9.    Failure to object at sentencing to:  (a) abuse of**

24                  **trust enhancement; (b) drug treatment and**

25                  **psychological counseling; and (c) restitution**

26  _____

27          [6]  What appears on its face to be patently false is
    defendant's allegation that Peterson told defendant that he would
    not object because Peterson was scheduled to leave the next day

28  for vacation.  (Peterson Decl. ¶ 40).

16

**(Claim #10)**

Defendant claims that Peterson was ineffective by failing to object at sentencing to the imposition of the abuse of trust enhancement and conditions requiring drug treatment, psychological counseling, and monthly restitution payments of $1,000.  Peterson, however, did object to the restitution schedule and abuse of trust enhancement in the sentencing position paper he submitted and during the sentencing hearing. (Kin Decl. Ex. G at 3; Kin Decl. Ex. I at 5-6).  Accordingly, defendant's ineffective counsel claim, which is based on the alleged failure of Peterson to so object, fails.  In any event, even if Peterson had failed to object, there was no prejudice, as the record amply supported the Court's decision to impose the abuse of trust enhancement and restitution schedule over any objection.  See Thornton, 511 F.3d at 1227 (affirming imposition of abuse of trust enhancement); United States v. Thornton, No. 03-50310, 2006 WL 932034 (9th Cir. Apr. 10, 2006) (rejecting defendant's challenge to restitution award).

Similarly, although Peterson did not object to the conditions requiring drug treatment and psychological counseling, the failure to do so resulted in no prejudice, as the Court's decision to impose these conditions was amply supported by evidence of defendant's long-term addiction to morphine and pain killers and a demonstrated narcissistic personality disorder. Indeed, with respect to the drug treatment and psychological counseling requirements, Peterson did not argue against them because he felt that the record supported their imposition by the Court and that they may be appropriate.  (Peterson Decl. ¶ 41).

1  Thus, the decision not to object to the imposition of these well-
2  supported conditions fell well within the wide range of
3  reasonable representation.  Strickland, 466 U.S. at 689.

### 10.  Failure to investigate and counter sentencing enhancement for carrying a firearm (Claim #11)

6            Defendant claims that Peterson failed to object to the
7  sentencing enhancement for carrying a weapon in connection with
8  the offense and failed to investigate defendant's claim that he
9  had a permit to carry such a weapon.  Peterson's failure to so
10  object was not error, however, because defendant had specifically
11  agreed to that sentencing enhancement in the plea agreement, as
12  well as facts in support of that enhancement.  (Kin Decl. Ex. E
13  at ¶ 18 & Attach. A at ¶ 5(g)(ii)).  Moreover, even if Peterson's
14  failure to object were somehow error, no prejudice resulted,
15  because defendant admitted to federal agents upon his arrest that
16  he had carried his weapon without a permit, which was sufficient
17  to support the enhancement.  (Kin Decl. Ex. C).  Furthermore,
18  whether or not Peterson investigated the existence of a permit is
19  entirely irrelevant, because the imposition of the sentencing
20  enhancement for carrying a firearm in connection with the offense
21  is in no way affected by whether the firearm was lawfully
22  possessed.  Cf. USSG § 2Fl.l (b)(7) (2000) ("If the offense
23  involved possession of a dangerous weapon (including a
24  firearm) in connection with the offense, increase by 2 levels.").
25  Accordingly, Peterson's failure to object to the firearm
26  enhancement or investigate the matter further did not constitute
27  ineffective assistance of counsel.  Strickland, 466 U.S. at
28  687-88, 694.

### 11.   Failure to argue against 16-level enhancement for amount of loss (Claim #12)

Defendant claims that Peterson erred by failing to object to the Court's imposition of a 16-level increase for amount of loss at sentencing.  Peterson did not do so, however, because defendant had stipulated to this enhancement in the plea agreement and agreed to facts that would support its application. (Peterson Decl. ¶ 43; Kin Decl. Ex. E at ¶ 18 & Attach. A at ¶ 8).  On appeal, the Ninth Circuit held that defendant's agreement to the loss enhancement in the plea agreement was a complete waiver of the issue.  <u>Thornton</u>, 511 F.3d at 1227. Accordingly, Peterson's actions in conformity with defendant's stipulations in the plea agreement can hardly be deemed to constitute ineffective representation.  To the contrary, if Peterson had so objected, that action would have constituted a breach of the plea agreement and placed in jeopardy the substantial benefits defendant received under the agreement. (Kin Decl. Ex. E at ¶ 24) (breach provision).  Furthermore, insofar as Peterson was free to address the amount of loss in connection with sentencing, Peterson did so by entreating the Court to impose a low-end sentence because the overwhelming bulk of the loss amount was made up of the intended loss for the $25 million dollar check that defendant did not successfully cash, thus causing no loss to any victim.

Accordingly, Peterson properly refrained from objecting to the 16-level enhancement for loss and otherwise appropriately raised the amount of loss issue.  Thus his performance in this regard did not fall below the wide range of reasonable

representation.   <u>Strickland</u>, 466 U.S. at 688.

### 12.   Failure to assert claim that government unlawfully informed third parties about search and arrest warrants (Claim #13)

Defendant claims that the government unlawfully informed third parties when it would execute arrest and search warrants for defendant and further claims that Peterson failed to act on such information.  It is not clear that defendant ever raised this issue with Peterson.  (Peterson Decl. ¶ 44).  Even if defendant had done so, Peterson, in the exercise of his judgment, would not have raised it with the Court, as there was no evidence in the record to support defendant's claim and, even if the government had informed third parties, such actions would not have been unlawful.  (Peterson Decl. ¶ 44).  Moreover, to the extent informing third parties were a violation of law, there would have been no remedy or advantage that might have been obtained in the criminal case by raising the issue, as it would not have been grounds for suppression of evidence or a basis for dismissing charges.  Accordingly, Peterson's representation in this regard was not defective, and defendant suffered no prejudice.  <u>Strickland</u>, 466 U.S. at 687-88, 694.

### 13.   Failure to craft defense based on purportedly exculpatory documents (Claim #14)

Defendant claims that Peterson failed to obtain or use certain purported exculpatory documents, namely, the Thornton Foundation Bylaws and the contract with USC.  Contrary to that assertion, however, Peterson, in fact, reviewed such documents in the course of reviewing the discovery provided by the government,

but he concluded that they were neither helpful nor exculpatory, and thus did not base any defense on these documents.  (Peterson Decl. ¶ 45).  In fact, as Peterson rightly concluded (Peterson Decl. ¶ 45), these documents merely prove the existence of the Thornton Kidney Foundation and its fundraising relationship with USC, which provided the mechanism by which defendant was able to perpetrate his fraud and steal money from USC and its donors. (Kin Decl. ¶ 3 & Ex. B).  Because these materials would not provide any viable defense to the charges, Peterson's alleged failure to review or rely on them could not have risen to the level of a valid ineffective assistance of counsel claim. Strickland, 466 U.S. at 687-88, 694.

### 14.  Failure to make downward departure motion based on defendant's medical condition (Claim #15)

Defendant claims that Peterson failed to obtain medical records or argue for a downward departure based on defendant's medical condition.  Peterson, however, was precluded from arguing for any departures by the plea agreement defendant signed and agreed to.  (Peterson Decl. ¶ 46; Kin Decl. Ex. E at ¶¶ 18-19).

### C.        Petitioner's Reply

The Court should hold an evidentiary hearing and appoint counsel to represent defendant.  The statements[7] of Diana M. Thornton and Patricia R. Thornton, defendant's wife and mother respectively, along with defendant's father's 2003 letter (Exhibits A, B, and C) support defendant's contentions regarding

---

[7]  Defendant refers to these as "declarations," but they are not signed under penalty of perjury and thus do not qualify as declarations.  See 28 U.S.C. § 1746.

his innocence and the failures of defense counsel.  Claim by
claim, with the exception of claims 2, 3, and 13, that defendant
did not address in his reply, defendant sets forth his responses
as follows:

### 1.   Failure to interview witnesses (Claim #1)

Defendant gave a list of names to Peterson and
Investigator Oates with the intention of preparing for trial.
Out of seven names provided, Oates only spoke with one.
Defendant requested his wife, mother, father, Bill Ott, and Steve
Hurd be interviewed because they would all demonstrate his
innocence.  For example, Hurd would testify to defendant's
application and receipt for a concealed weapon permit.

### 2.   Failure to prepare for trial and insistence that defendant plead guilty (Claims #4 & #5)

Defendant did not communicate to Peterson, Oates, or
any other court officer that he wanted to accept a plea deal.
Peterson inflates his record of communications with defendant,
and, if the defendant had been aware it was his decision to
accept or reject the plea, he would have insisted on trial.

### 3.   Instructing defendant to lie about defendant's innocence at the guilty plea hearing (Claim #6)

The admissions defendant made in the plea agreement and
in the plea colloquy were based on Peterson's instructions and
warnings that defendant would lose the deal and receive twenty
six years in prison.

### 4.   Failure to forward letters at sentencing (Claim #7)

Defendant adds no new facts but states his disagreement

with the government's position.

**5.   Failure to assert entrapment defense (Claim #8)**

If Peterson had interviewed the people defendant suggested, Peterson would have discovered that the government was the reason defendant was working with the Federal Republic of Nigeria.

**6.   Failure to object to presence of victims at sentencing hearing (Claim #9)**

There were five victims in the courtroom at sentencing, not thirty-five.  Nonetheless, Peterson failed to object to their presence.

**7.   Failure to object at sentencing to:  (a) abuse of trust enhancement; (b) drug treatment and psychological counseling; and (c) restitution (Claim #10)**

Defendant renews his claims of error and disagrees with the government's position.

**8.   Failure to investigate and counter sentencing enhancement for carrying a firearm (Claim #11)**

Defendant reiterates his claims and notes that the firearm was never used to manipulate others; nor was it used in connection with the alleged crimes.  Although defendant agreed to it in the plea agreement, he calls into question the legitimacy of that document.

//

**9.   Failure to argue against 16-level enhancement for amount of loss (Claim #12)**

Defendant reiterates that counsel should have objected

1  to the 16-level enhancement.

2       **10.  Failure to craft defense based on purportedly**

3            **exculpatory documents (Claim #14)**

4       Defendant renews his claim that Peterson failed to

5  locate the Foundation's bylaws and that the bylaws would have

6  exonerated him from the charges in the indictment related to his

7  activity at the Foundation.

8       **11.  Failure to make downward departure motion based on**

9            **defendant's medical condition (Claim #15)**

10      Defendant's medical records should have been presented

11  at sentencing in order to argue for a downward departure because

12  they would have demonstrated that defendant's morphine use is

13  medically legitimate.

14                            **IV.**

15                        **DISCUSSION**

16  **A.       Legal Standard**

17      A district court may deny a § 2255 motion without

18  holding an evidentiary hearing when the record clearly

19  establishes that the petitioner is not entitled to relief or when

20  the motion presents "no more than allegations unsupported by the

21  facts or refuted by the record." United States v. Quan, 789 F.2d

22  711, 715 (9th Cir. 1986).  "In addition, judges may use their own

23  notes and recollections of the plea hearing and sentencing

24  process to supplement the record." Shah v. United States, 878

25  F.2d 1156, 1159 (9th Cir. 1989).  "Additionally, where a

26  petitioner's allegations are vague and conclusory, the Court need

27  not grant an evidentiary hearing.  Id.

28      Here, defendant asserts that his contradictions to

                              24

Peterson's version of the facts warrant an evidentiary hearing. Defendant's contentions, however, are directly contradicted by the record and sometimes his own statements.  For example, defendant claims that he thought it was his counsel's decision to accept the plea.  (Reply at 4.)  But at his change of plea hearing, defendant was placed under oath and the Court asked, "And based on your education, your experience, and what you know of your case, are you satisfied that going forward with this plea agreement is in your best interest?" defendant responded, "Yes, I do."  (Gov't Opp. Ex. F at 28.)  In his claim nine of his petition, defendant argues that his counsel was ineffective for failing to object to the thirty-five victims present at his sentencing.  But, in his reply, he indicates that there were five victims present (Reply at 9.)  Further, defendant's disavowal that he represented he was a federal agent is contradicted by defendant's petition in claim eight, wherein he argues that his "relationship with the United States Government is the sole reason" he was interacting with the Nigerian government.  (Reply at 8.)  As noted earlier, the purported declarations that defendant's mother and sister submit are not under penalty of perjury and therefore not evidence to support petitioner's claims.

Given that defendant's facts are contradicted by both the record and himself, the Court finds that the instant matter is appropriate for decision without holding an evidentiary hearing.  Based on the arguments and authorities in the parties' papers, and the Court's independent research, the Court denies petitioner's § 2255 motion.

**B.        Analysis**

To demonstrate ineffective assistance of counsel, the petitioner must first show that counsel's performance was deficient. <u>Richter v. Hickman</u>, – F.3d –, No. 06-15614, 2009 WL 2425390, at *6 (9th Cir. Aug. 10, 2009) (citing <u>Strickland</u>, 466 U.S. at 687). "To be 'deficient,' counsel's performance at trial must be objectively unreasonable – it must be 'outside the wide range of professionally competent assistance.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 688, 690). Counsel is afforded a presumption of adequacy and the Court should be highly deferential in judging counsel's performance. <u>Id.</u>  The petitioner must then show that counsel's deficient performance prejudiced his defense such that but-for counsel's failures, there is a reasonable probability that the outcome of the proceeding would have been different. <u>Id.</u>  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at *13 (internal quotations omitted).

**1.   Claim One**

Defendant claims that his counsel was ineffective for failing to interview witnesses who would demonstrate his innocence. The witnesses that defendant provided to Peterson, however, are individuals with whom Peterson or the investigator spoke, and there is no evidence that they would demonstrate petitioner's innocence.

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." <u>Knowles v. Mirzayance</u>, - U.S. -, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009) (citing <u>Strickland</u>, 466 U.S.

at 690).  Here, Peterson directed the investigator to interview a
number of witnesses, including those whom defendant now claims he
instructed be interviewed:  Steven Hurd, B. Ott, defendant's
wife, and defendant's mother.  The investigator also interviewed:
(1) Dr. Kalu, (2) Dr. Sansu; (3) Dr. Hapleman; and (4) M. Silk.
(Peterson Decl. ¶ 33.)  Defendant's claim is contradicted by the
record:  his counsel conducted a thorough investigation of those
that defendant requested and others.  Petitioner adduces no
evidence from these witnesses showing their testimony would
exonerate him from any of the charges.  The state of the record
demonstrates that counsel conducted a "thorough investigation,"
and defendant is unable to demonstrate that his performance was
unreasonable.

### 2.   Claims Two and Three

Defendant claims that the key prosecution witness gave
federal agents access to defendant's documents and that the
agents lacked a search warrant when they reviewed the documents.
While it is unclear whether defendant actually informed Peterson
of this, it is irrelevant.  As the government notes, a search
warrant is not required when a third party provides documents to
federal agents because that activity is not, by definition, a
search.  United States v. Snowadzki, 723 F.2d 1427, 1430 (9th
Cir. 1984).  Consequently, any failure to inquire into this issue
did not constitute ineffective assistance because the provision
of documents has not been shown to be other than legitimate.

### 3.   Claim Four

Defendant claims that his counsel forced him to accept
the plea agreement because, despite defendant being innocent,

Peterson was unwilling to go to trial.  This claim is contradicted by Peterson's work log and, more importantly, by defendant's own statements.

The Court is not required to give weight to these "patently frivolous" claims.  See Shah, 878 F.2d at 1158. Peterson's work log demonstrates that he spent a significant amount of time between July 15, 2002, and March 7, 2003, investigating and preparing for trial prior to the plea deal offered by the government.  (Peterson Decl. Ex. A.) Additionally, defendant's handwritten confession contradicts his claim of innocence:  (1) "I opened unauthorized accounts . . . in the name of the USC/Thornton Kidney Research Foundation"; (2) "I used these funds to pay . . . as a person with personal debts"; (3) "I admit that the security agents I hired were not a 'protective detail' or a federal agents [sic]"; (4) "I never officially worked with the State Department or as a federal employee of the state department."  (Kin Decl. Ex. C.) Accordingly, Peterson was not ineffective for failing to advocate defendant's innocence at a trial when defendant knowingly admitted his guilt.

### 4.   Claim Five

Defendant claims Peterson was ineffective because Peterson failed to communicate to the government his willingness to cooperate in order to reduce his sentence.

This claim fails because Peterson, after conducting an investigation, determined that defendant's offer of cooperation would not provide substantive help to the government.  Because Peterson had conducted a thorough investigation, as discussed

above, he determined defendant's proffer of assistance would be ineffectual and, thus, did not communicate it to the government. As in Knowles, this was a strategic decision made after investigation and, as such, does not constitute defective representation.

Additionally, in his handwritten confession, defendant wrote, referring to his Nigerian contacts, "I would be pleased to turn over the names, records, etc. to any govt. agency whom would need this assistance." (Kin Decl. Ex. C.) Even if these allegations constituted grounds for ineffective assistance, which they are not, this claim would fail for lack of prejudice because defendant communicated the offer of assistance himself.

### 5.   Claim Six

Defendant's claim that his counsel instructed him to lie about his innocence at his plea hearing is contradicted by the record, including his own statements.

"A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." Shah, 878 F.2d at 1158 (quotations omitted).  As discussed in claim four, defendant confessed to his crimes and testified at his plea hearing that his plea was in his best interest.  Defendant's statements in his habeas petition that the only reason he pleaded guilty was because of his counsel's instruction to lie are "patently frivolous and totally incredible." See id. Counsel explained that he carefully advised defendant of the terms of the plea agreement and did not

instruct him to lie.  Additionally, given that the government's
letter indicated that defendant could face a maximum sentence of
over twenty years, and that defendant had confessed, encouraging
him to accept the plea bargain was not "outside the range of
competence."

### 6.  Claim Seven

Defendant claims his counsel was defective for failing
to forward letters from his family members in preparation for his
sentencing.  As the government notes, the Court at sentencing
stated that it had reviewed all of the letters submitted by
defendant.

That there may have been other letters available from
defendant's immediate relatives, in addition to those of his
cousin, grade school teacher, church friends, and extended
relatives would have had no effect on his sentencing.  See Shah,
878 F.2d at 1158 (providing that the Court can use its own
recollection to supplement the record).  Further, the information
attached to defendant's reply, purported to be those not
submitted, do not demonstrate innocence and do not contradict the
record.  For example, defendant's wife discusses being present
when defendant attempted to cash the $25 million check and
states, "I asked him when we could begin using this money.
[Defendant] stated that the bank needed to confirm that the check
was legitimate first."  (Reply Ex. A, Declaration of Patricia
Thornton ("P. Thornton Decl.") at 2.)  Defendant's father's
letter provides, "[Defendant], our son, we feel was caught up in
a scam which he totally believed and trusted in what the Nigerian
scam artists had told him and this, of course, was mixed with his

greed." (Reply Ex. C.) These statements show that defendant did try to cash the $25 million check and that he was involved in a scheme to defraud that was fostered by his greed. If Peterson did possess defendant's father's letter and decided not to submit it, that decision would have been in defendant's best interest, considering its content. Regardless, no prejudice is shown because additional letters would not have affected the Court's sentencing.

### 7. Claim Eight

Defendant claims his counsel was ineffective for failing to assert an entrapment defense. Defendant's reply explains that, contrary to the government's argument, there was government involvement because his "relationship with the United States Government is the sole reason" he was interacting with the Nigerian government. (Reply at 8.)

Here, defendant's contradiction and attempt to claim that there was government involvement lacks credibility and undermines his claims of innocence. First, defendant provides no factual support for his claim that the government was involved. Second, his assertion that the government was involved reinforces the charge that defendant held himself out as a government agent. The Court need not give credence to defendant's argument. <u>Quan</u>, 789 F.2d at 715. Without government involvement, entrapment cannot serve as a defense. <u>Glassel</u>, 488 F.2d at 146 n.2. Counsel's performance cannot be found deficient for failing to raise a defense that could not apply.

### 8. Claim Nine

Defendant argues his counsel was defective for failing

to object to the presence of victims of his scheme at his
sentencing hearing.   Victims are permitted to attend sentencing
hearings and possess the right to be "reasonably heard" at those
proceedings.   <u>Kenna</u>, 435 F.3d at 1015.   Any objection made to the
presence of defendant's victims would have been contrary to law.
As discussed above, counsel cannot be found ineffective for
failing to mount a legally unavailable argument.

### 9.   Claim Ten

Defendant claims his counsel was ineffective for
failing to object at sentencing to the enhancement for abuse of
trust and conditions requiring drug treatment, counseling, and
restitution.   The record demonstrates, however, that Peterson did
object to the abuse of trust enhancement and the restitution
schedule both in the sentencing papers and at the hearing.

Regarding the drug treatment and counseling, Peterson
explains that he made the decision not to object on the grounds
that the record supported it and that it was likely appropriate.
Whether defendant takes morphine based on an addiction or for
pain control, it is uncontradicted he was taking it regularly,
and his father's letter states that, "[h]e has been on morphine
for years to keep the pain subsided.   This may be one of his
psychological problems he has acquired by taking the medication."
(Reply Ex. C.)   Thus, information defendant supplied to the Court
supports the reasonableness of imposing drug treatment and
counseling.   As such, counsel's failure to object did not
constitute ineffective assistance of counsel.

### 10.   Claim Eleven

Defendant claims his counsel was ineffective for

failing to present evidence that he had a permit for the weapon he carried in order to counter the sentencing enhancement for carrying a gun in commission of a crime.  In his plea agreement, defendant agreed to a two-point enhancement for possession of a dangerous weapon.  (Lin Decl. Ex E at 7.)  The plea agreement also provides that "Defendant and the USAO agree not to seek, argue, or suggest that any specific offense characteristics, adjustments or departures other than those stipulated [above] should be imposed."  (Id.)  If defendant's counsel had objected to the enhancement at sentencing it would have constituted a breach of the plea agreement.  Additionally, as the government notes, whether defendant possessed a permit for the concealed weapon is irrelevant for the purposes of the enhancement.

Lastly, defendant raises for the first time in his reply the contention that he did not use the weapon in the commission of the crimes.  Use, however, is not a legal requirement.  See United States v. Riley, 335 F.3d 919, 930 (9th Cir. 2003) (affirming enhancement where gun was affiliated with other evidence used in connection with the crime and where defendant claimed, like here, that he carried the gun for protection).  Thus, no prejudice can be shown from Peterson's failure to object on this ground.

### 11. Claim Twelve

Defendant claims his counsel was ineffective because he did not object to the amount of loss at sentencing.  As discussed above, a challenge to this would have constituted a breach of the plea agreement.  On appeal, the Ninth Circuit held that defendant's agreement to the loss amount in the plea constituted

a waiver of the issue.  As such, defendant cannot re-litigate this issue because prior decisions in the case constitute law of the case and should be respected.  United States v. Hayes, 231 F.3d 1132, 1139 (9th Cir. 2000).  Moreover, counsel cannot be found ineffective for keeping a beneficial plea agreement intact.

### 12.  Claim Thirteen

Defendant claims his counsel was ineffective for failing to act on the information that the government informed third parties when it would arrest defendant.  First, it is unclear defendant told Peterson about this.  Second, it does not appear to be an actionable complaint.  See Rouse v. United States Dep't of State, 567 F.3d 408, 413-414 (9th Cir. 2009) (discussing the Privacy Act, 5 U.S.C. § 552a).  Lastly, petitioner fails to show how raising this argument would have favorably impacted defendant's case.  Consequently, counsel's performance was not defective for failing to raise this issue.

### 13.  Claim Fourteen

Defendant argues that his counsel was ineffective for failing to introduce to the Court the bylaws of his Foundation, which he claims would be exculpatory.  Peterson reviewed the bylaws and did not provide them to the Court because, in his judgment, they were not exculpatory.  This assessment is correct, as they merely establish the existence of defendant's charitable organization.  (Kin Decl. Ex. B.)  Furthermore, defendant's written confession establishes that he opened unauthorized accounts and otherwise committed the acts that formed the basis of the charges against him.  As such, the evidence conclusively shows that counsel could not have been defective for failing to

bring the bylaws to the Court's attention.

### 14. Claim Fifteen

Defendant argues that his counsel was ineffective for failing to obtain medical records and argue for a downward departure based on his medical condition.  As discussed above, arguing for a sentence that departed from the plea agreement would have violated the agreement and caused defendant more harm than good.  Additionally, the Court had evidence of defendant's medical condition from the letters submitted on his behalf.  For example, his wife's letter provides "On our first date, he made it clear how serious his illness, angiodysplasia, was" and "Despite the pain which has plagued him for much of his life, [Defendant] manages to make each day count. . . ."  (Kin Decl. Ex. G.)  Another friend of defendant wrote "He had extreme health problems which necessitated many surgeries and other interventions by the health professionals."  (<u>Id.</u>)  Another letter provides "I know he has a very serious physical condition with only one kidney and is always in a lot of pain."  (<u>Id.</u>) Accordingly, the Court was aware of his condition and could have, but for the reasons articulated in its tentative ruling, did not reduce defendant's sentence on those grounds.  Counsel's representation was not defective and any such argument would have been without effect.

//

//

## V.

### CONCLUSION

Accordingly and for the foregoing reasons, the Court

denies petitioner's § 2255 motion to vacate, set aside or correct

sentence.

        In anticipation of petitioner's request, the Court

denies issuance of a certificate of appealability because

petitioner has not "made a substantial showing of the denial of a

constitutional right."  <u>See</u> 28 U.S.C. § 2253(c)(2), (c)(3).

        IT IS SO ORDERED.

        IT IS FURTHER ORDERED that the Clerk shall serve a copy

of this Order on the government and defendant at his last known

address.

        DATED:   September 8, 2009.

ALICEMARIE H. STOTLER

_____
      ALICEMARIE H. STOTLER
    UNITED STATES DISTRICT JUDGE